This case starts with the proposition that the Commissioner has conceded that the ALJ erred in relying on the identification of two occupations, the parimutuel ticket checker and the telephone quotation clerk. So that leaves us with one occupation and that occupation is the dowel inspector. The vocational expert testified and the ALJ found that the occupation represented about 17,000 jobs in the national economy, less an approximate 10% erosion, but the ALJ never found that number to be significant, only found the aggregate to be significant, and the Commissioner would like the Court to substitute its own fact-finding for that of the Commissioner on the premise that other courts have affirmed ALJ findings that a lesser number is significant in some occasions. But that's not really the test. The test is whether a reasonable ALJ could find that this number, is not significant. I would submit to you that this Court should refrain from making a factual finding because the agency is the fact-finder in this instance and not the Court of Appeals, not the District Court. We have done this fairly routinely, though, I think, where there's a problem with one of the jobs or two of the jobs. The problem is that the threshold is so low, I mean, ridiculously low, with regard to what's an adequate number of jobs or what the standard is for enough jobs, and the jobs don't even have to actually be available. So do you know any case in which this Court has ever done a kind of reversal you're asking for? I don't know that this Court has ever decided this particular question. So I'm not aware of a case that decides this way, but I'm not aware of the Court addressing the issue either. You mean as to whether there's harm, as to whether, where there's harmless error, where there's a mistake in this regard, it could be harmless error because there's another job, at least one job? At least one occupation that represents. One occupation, I mean, yes. Right. Right. I don't think that that's... Well, I've seen them a lot. Maybe they're really decided in mem dispos. I don't know. But I've certainly seen them. And here's one right on our desk now. But I've seen them. Yeah, I think memorandum dispositions, that does happen quite frequently. And we never know from a memorandum disposition exactly what all the facts are. That's by design. Exactly. The other problem is we've asked the Court to take judicial notice of matters that are subject to administrative notice, and the district court, with respect to the occupational outlook handbook. Let me ask you one question. The DOT, the dictionary of, what are they, what's it called? Occupational titles. Okay. It doesn't have numbers. Is that right? It contains no job numbers. Right. And ordinarily that comes from the vocationalist expert. Correct. And the vocational expert, the Commissioner takes administrative notice of the DOT as the description of work. The Commissioner also takes notice in paragraph D-2 of county business patterns. County business patterns just list job numbers by industry. That's all that it lists. The Commissioner also takes notice of the occupational outlook handbook in paragraph D-5, and the occupational outlook handbook marries occupations and job numbers and job descriptions and kind of operates as a bridge between the DOT and the county business patterns, which provides job numbers. Vocational experts don't just, we would hope that vocational experts just don't make numbers up. They have to get them from somewhere. The Commissioner said that she will take administrative notice. Will is a form of a mandatory obligation. It's a promise. I will take administrative notice, just like I will sit down with electrons. If asked. She wasn't asked, you didn't challenge, et cetera. Well, when this court confronted the will take administrative notice of the DOT in Terry and Johnson and Light and other cases that predate the Social Security ruling, this court imposed upon the Commissioner an obligation to adduce a persuasive basis for deviating from that source of administrative notice. And the Commissioner makes no differentiation of different sources of administrative notice in her statement that she will take administrative notice of. But also, you know, the document you want to rely on, you need to extrapolate in a fairly complicated fashion to get where you want to get. It's not in there. The number that you're asking about isn't in there. You have to use the occupation outlook handbook and the hyperlink to the employment projections to derive that it's 5,800 jobs at most that are inspectors in the wood industry. But that is the nature of administrative notice. ago in the immigration context that administrative notice is a method of establishing facts without any evidence. And so we look at the DOT to establish that there are certain requirements, jobs, education, exertional, non-exertional impairments, environmental concerns, and we do that without the introduction of any evidence. And the occupation outlook handbook isn't any different. So you want us to take judicial notice of what you're asking? Well, I'm asking the court to treat the occupation outlook handbook and county business patterns the same way this court has always treated the DOT. And what relief, what precise relief are you asking for? What do you see happening here? That we send this case back. This woman has a very restrictive residual functional capacity. She's limited to sedentary work. She's limited to simple repetitive tasks, which we know wipes out a large swath of occupations. And she has limited neck motion, which is going to impact her ability to do production and other types of work. The vocational expert conceded in this case that there's a 10 percent reduction in doing inspecting-type work. She didn't identify any other types of occupations that would be appropriate. This case needs to go back for an additional hearing to adduce whether or not she can engage in a significant number of jobs given this. So you envision just further proceedings at step five? Correct. Correct. Well, look, your client, she suffers from diabetes, high blood pressure, depression, corporal tunnel syndrome, gout, anxiety, a bleeding ulcer, a lump in her throat, nerve damage, fatigue, blurry vision, pain and swelling in the arms, neck, fingers, legs, and feet, migraines, dizziness, vomiting, constipation, and diarrhea, back pain, high cholesterol, sleep apnea. Sounds like a record of history to me. It's a very tragic situation for a young person to have. No. The region would be what? I'm sorry, say that again. The region would be what? The region would be the San Diego Imperial Region or the Southern California Region. The State of California would be the region. I'm not sure what the region would be in this particular case. This court in one case has suggested that the State of California can be a region except when they're at the extremes. So I'm not really, this case really isn't about the region because it was undefined in this case. But it could be defined on remand. Wouldn't that make a big difference, the way it's defined on remand? It would, but as in Gutierrez, it wasn't. Region is one of those factual developments that needs to be brought up administratively, not to this court. Well, what do you think? Yeah, well, I was just going to say, what's your view? Is it statewide, countywide, metropolitan-wide? My view would be that it's the typical bi-county metropolitan statistical areas that are described by OMB and the other agencies. They're always used for, that's how job numbers are reported in metropolitan statistical areas. That's how Department of Labor publishes job numbers. Well, tell me, what is the region that you believe? I think the region for Linda LaMaga, because she lived in San Diego, would be San Diego, Imperial County, or several other regions of the country. And several other regions could be Los Angeles, Orange, Chicago, New York. Are you also contending that the national number is not significant? I'm saying that the national number of jobs as a Dowell inspector could be considered not significant by a reasonable ALJ. Because this court never reviews favorable decisions. When an ALJ says that this number is too low, that case never comes before the court of appeals. This court reviews only what we consider to be the wrongful denials of benefits, not the commissioner doesn't bring wrongful grants of benefits to the court. Okay, do you want to save a minute for rebuttal? You're over your time, actually. All right. Let's hear from the government. Thank you. Good morning, Your Honor. Shea Bond on behalf of the Acting Commissioner of Social Security. Really, the only issue before this court is whether the jobs within the occupation of the Dowell inspector, which was 1,530 within the local economy, that was the defined region was local economy at the hearing. He just said he was also complaining about the national number. Well, the national number was higher, but for this court to find that a significant number exists, it's either the national number or the local number. So even if this court were to find that the national number was not significant, as long as the local number is significant, that's all that matters. And so if you look at the menial case. I mean, it is true that when somebody says there are three jobs and implicitly adds up the numbers and says that's enough, and then it turns out the two of them are wrong, how do we know when he would have decided if there were only one of them? Well, that scenario has come before this court multiple times, as Your Honor had mentioned. Is it true that there's no actually decided presidential case? Well, there's menial. So in menial, the situation was there were two occupations identified. It was surveillance system monitor, and I can't remember what the other occupation is at this moment. And so the challenge was that the jobs identified was not a significant number, and this court went on to say, well, the occupation of surveillance system monitor, there were between 1,000 and 1,500 of those jobs in the local economy, and that alone was sufficient to establish the significant number at step five. But menial was set up in the same way, i.e., the ALJ had never actually found that? So in menial, there were two occupations. The ALJ had found that there were between 1,000 and 1,500 surveillance system monitor jobs in the local area. This court said that given the case law in the circuit barker at the time, that alone showed that that number was significant. And then the last sentence in the court's decision is, thus we need not address menial's arguments regarding the additional occupation of fundraiser. So this court determined just by looking at the one occupation and the jobs existing within that one occupation, that was sufficient to establish the significant number of jobs in the local economy. And again, the testimony here shows that within the local economy, we had 1,530 local jobs. And local economy is what area? Now, local was not- There's no definition of local economy. There is, but it's a flexible- Where is the definition? Is it in the opinion? Is it in the ALJ's opinion? It's not in the ALJ's opinion. Where do we find the definition of a local economy? Well, I think you have to take in the context that you can have a local economy, you can have a state economy, and I think by saying local economy, we're shrinking it down lower than the state. However, if this court were to find that- Did the regs say local economy? Could you repeat that, Your Honor? Did the regulations say local economy? No, the regulations talk about regional economy, but this court's decisions have- What's the region? Well, region is a flexible definition. And so in Gutierrez, it talked about- It has some meaning. Well, Gutierrez cited in our brief said that a state can be a regional economy, that a city can be a local regional economy. It's meant to be flexible. Is it dependent on the job or the occupation that's in play? I don't think so. I guess it could, that if there was an occupation that was more prevalent in a particular city, maybe that's why a vocational expert would cite it because it's available. The ALJ just decides, well, for this case, we're going to apply a regional economy, which is from, let's say, Southern California. Or we're going to apply a statewide economy. Well, the ALJ specifically asked the VE to testify to the local economy as opposed to state economy. So I think it's reasonable to assume that with the instruction of a local economy, the ALJ intended it to be smaller than the state. And I've seen that language used in multiple cases. Would it make a difference if we were talking about a statewide economy? I don't think so, Your Honor, because- Numbers here, 1,500 versus- No, because the 1,500, and we've cited multiple cases in our brief, both published, unpublished. I did a 28-J letter with a recent decision by this court unpublished the Evans case, which said that 600 jobs in the regional economy is sufficient. So when you look at the combination of the cases in this circuit and the cases that this court has cited favorably from other circuits, it's clear that in this case the 1,530 jobs would be deemed sufficient, absent the other two occupations being worked out. Whether it's a statewide economy or whether it's a regional economy, whether it's a local economy. Correct. I think that number is sufficient under any of those definitions. I gather that your opponents seem to say that this question wasn't raised and it might be raised- the question of the size of the area wasn't actually raised before the agency. It might be raised in a remand, but- Correct. And, you know, that gets to the point about that these issues should have been raised at the hearing before the ALJ. Again, menial controls. Back in 1999, this court said that all these issues need to be raised to the ALJ at the hearing, and specifically it was about the job numbers that exist within an occupation. And that was not done here. There was competent counsel at the hearing. This attorney, he has 20 years' experience in litigating and working social security hearings, and he did not feel it necessary to question the vocational expert about the source of the job numbers. It was conceded at that point. What did the Supreme Court hold? I think in- is it Sims, the case about- which says there doesn't need to be exhaustion, meaning to the commissioner? Is that what it means? No, Sims only addressed issues that are brought to the appeals counsel. And so- That's what I just said. Right. Just to the appeals counsel, as opposed to- Not whether it has to be raised at all ever. Right. It did not address at the ALJ hearing. And, in fact, and I believe it's in a footnote in our brief, we- And I thought it also talked about the responsibility of the ALJ to develop issues, him or herself. In Sims? Yes. Now, that I do not recall. What I do know is that Sims said that if a claimant doesn't raise an issue to the appeals counsel, it's not waived, but it was not addressing the issue about whether there's waiver at the administrative level. So Menial still survives Sims. And I would point out here that this evidence was uncontested at the hearing. The commissioner satisfied her burden of establishing the numbers of jobs available within this occupation through vocational expert testimony. Bayless says that the V.E.'s expertise is the recognized basis for that testimony. And unless it goes challenged at the hearing, it's waived. And, in this case, even the evidence that's produced afterwards does not sufficiently challenge the number of jobs. No. I take it that you have no problem if we look at the state as the region. I say you could look at the state as the region. If this court thought- No reason why we couldn't do that. If this court thought that the local, as the term the ALJ used, was vague, I would say you could use the state, but I don't think it would make any difference in the outcome of this case. The 1,530 jobs of the state would be- Why is that? Because I think the case law within the circuit, both published and unpublished, establishes that 1,530 jobs within the state would be regions.  Oh, I apologize, Your Honor. So, the case law, published and unpublished within this circuit, establishes that even if you took the state of California as the region, 1,530 jobs would be sufficient. And, for all the reasons that we cited in our brief, the cases that we cited in our brief, and the additional authority that I provided to the court in the 28J letter, stated that as little as- What's the population of the state of California? What was it at critical period here? I don't know, Your Honor. Well, you know, it's probably 30 million, close to 40 million. That's a lot of people. True. But, the question isn't the population of the state, it's whether there's a number of jobs within that state that's significant. California's always been a very populous state, and this court has, again, just recently affirmed in the Angelica Evans case, that 600 jobs within the region is significant. Was the region in the Evans case California, or we don't know? We don't know. But, again, I feel like there is sufficient case authority. I must say that I find this whole exercise a little disturbing, because what is the function of this number? What are we trying to find out with it? Well, at step five- We're trying to find something about whether there's really any chance this person could possibly get a job. And that's not part of the calculus. If you look in our regulations, the question of whether the person actually applied for the job and would get the job is not at issue. But there has to be some notion that if they were really diligent and they really did what they were supposed to do, maybe they could get it. Maybe they could get a job. Well, it's just the availability of the jobs. So it's the fact that jobs exist. So it has nothing to do with any real-world anything. It's just some number out there. Well, I mean, it's real-world in the sense that the vocational expert is looking through source materials to determine how many of these jobs exist in the economy. I mean, I'm not the vocational expert. I know. I understand that. But on that theory, you could be talking, you know, what difference does it make if it's a job the person could do or can't do? I mean, you're trying to find something that's relevant to the question of whether or not this person is actually should be paid money for not being able to work because they're really not going to be able to work. I mean, in the long run, that's what you're trying to find out, no? Right. And so the question is that when you take the claimant's residual functional capacity, which is uncontested here, that you can do a range of sedentary work, and then you add that to the vocational profile factors of age, education, prior work experience, including transferability of skills, whether with those combination of factors, could the claimant still do work in the economy? And here, the vocational expert absolutely identified 1,530 jobs within this particular inspector occupation that this claimant could do. Okay, but if she's in San Diego and the jobs are all in, you know, northern California, I mean, we've been very lax about this in terms of making any sense out of it. Well, and I think Gutierrez talks about the fact that this is a flexible definition and flexible standard. And, again, if there was a question – if the plaintiff, through counsel's representation, had any issue with the numbers of jobs identified or where – Plus, it also seems quite bizarre in this instance that the VE picked up – picked out a job called a dowel inspector. I mean, you know, you would think that if they could inspect dowels, she could inspect other things too. Right. And I'm surprised. I actually looked up the dowel. Anybody who's worked on a piece of furniture from Ikea has worked on a dowel pin. And I was surprised to find, when I did research, that there's actually a lot of dowel manufacturing in the United States, and there's lots of manufacturers within the state of California. So those jobs are available. That's the occupation that the DOT classification – that the vocational expert picked, and those are the jobs that this claimant can perform. Okay. Thank you. Thank you. We'd ask that you affirm. All right. You have a minute for rebuttal. Thank you very much. Could you address the waiver argument again? Yes. The issue wasn't addressed at the hearing, correct? Correct. So how do we get over that? The courts across the nation have always allowed the introduction of the DOT and sources of administrative notice at the court level, and I don't think we should constrict that now. So what do we do with Menal? In Menal, the lawyer tried to introduce a third-party, non-governmental publication as evidence of the number of jobs. No, but not on that point, but on the question – I mean, it does seem to be structured very similarly to this case. That is, that there was a challenge to one of the jobs, and the court went to the other job and said, well, that job has enough jobs, so we don't care about the one that doesn't. So rather than doing what you're asking for, which is to remand. In Menal, I don't think that the ALJ made a composite finding of significant numbers of jobs. It was 18 years ago, and my memory is a little bit fuzzy, and I know it's not in the decision whether the ALJ parsed the individual occupations, but I'm positive that's not in the decision. But what is in the decision is an attempt to introduce other evidence, and the court said if you have other evidence, you have to bring it. Look, if we say the regional economy is the state of California, does that help you? It does because the Why does it take us so long to say it does? No. Does it or doesn't it? It does help. All right. Based on the CODA in Gutierrez, which says, as Judge Brezon hinted at, if the person lives in San Diego and the jobs are in weeds, that's probably not a good region, and that's exactly the kind of dowel inspectors of woodworking thing. I thought Gutierrez said it's okay to have a state. I'm sorry. This whole field is a mess. Yes. Did Gutierrez say that it's okay to use the state as a region? Except when the person lives in San Diego and the jobs are in weeds. But you said in your earlier argument, as I understand it, that that issue hadn't been raised, what was the region, and that it would be relevant at best on remand if there were a remand. That's correct. In other words, you're not asking us to decide now whether there was a problem with the region. Correct. I'm out of time again. Just a second. Do you have a question? No, that's all right. Okay. Thank you. Thank you, counsel.
judges: Pregerson, Paez, Berzon